UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOLY GERMINE,<br><br>Defendant. | Criminal Action No. 22-161 (JDB) |

MEMORANDUM OPINION

In May 2025, Joly Germine stood trial for one count of conspiracy to commit hostage taking and sixteen counts of hostage taking related to the October 2021 kidnapping of sixteen American missionaries in Haiti by the Haitian gang 400 Mawozo. The government alleged that Germine, a leader of the gang who was in Haitian prison at the time, had directed the gang to kidnap the missionaries and use them to negotiate Germine's release from prison. At the close of the government's case-in-chief, Germine moved for a judgment of acquittal, which the Court denied. After the close of all evidence, Germine renewed his motion for a judgment of acquittal, on which the Court reserved its decision until the parties had submitted post-trial briefing. On May 16, the jury returned verdicts of guilty on all seventeen counts. The parties then briefed the renewed motion for judgment of acquittal, as well as Germine's alternative motion for a new trial. For the following reasons, the Court will deny the motions.

Background

In May 2022, a grand jury returned a one-count indictment charging Germine with conspiracy to commit hostage taking in violation of 18 U.S.C. § 1203(a), to which Germine pled not guilty. See Indictment [ECF No. 1] at 2–3; Minute Entry (May 11, 2022). The grand jury returned a superseding indictment in July 2022, adding sixteen charges of hostage taking and

1

aiding and abetting in violation of 18 U.S.C. §§ 1203(a), 2. See Superseding Indict. [ECF No. 10] at 8–9. Section 1203(a) "makes extraterritorial hostage-taking a criminal offense when the victim is a United States national." United States v. Straker, 800 F.3d 570, 582 (D.C. Cir. 2015); 18 U.S.C. § 1203(a). Counts 2–17 of the superseding indictment charged Germine with the hostage taking of each of the sixteen American missionaries kidnapped by 400 Mawozo in October 2021. See Superseding Indict. at 8–9.[1]

Trial commenced on May 6, 2025. See Minute Entry (May 6, 2025). After the government rested, Germine moved for a judgment of acquittal on all counts. See Trial Tr. (May 14, 2025 AM) [ECF No. 111] ("May 14 AM Tr.") at 1781:25–1782:21, 1784:10–16. The Court denied the motion, concluding "the evidence [wa]s plainly sufficient to sustain a conviction" on all counts. See id. at 1785:18–23. But the Court did not preclude Germine from renewing his motion after the close of all evidence in the case, see id. at 1785:23–25, which Germine then did, see Trial Tr. (May 15, 2025 PM) [ECF No. 114] ("May 15 PM Tr.") at 2044:11–2045:2. This time, Germine argued the government had presented insufficient evidence of the U.S. nationality of ten of the sixteen hostages, as charged in Counts 2–5 and 9–14 with violations of 18 U.S.C. § 1203(a). See id. at 2044:11–2046:14. The government disagreed, emphasizing that multiple witnesses had testified that the sixteen hostages were American and there was no contrary evidence in the record. See id. at 2047:22–2048:6. The Court reserved ruling on the motion to permit the parties to brief the issue in writing following trial. See id. at 2048:21–2049:1.

The jury returned its verdict on May 16, finding Germine guilty on all seventeen counts. See Minute Entry (May 16, 2025). The same day, the government submitted an initial notice

---

[1] At trial, the government presented evidence that 400 Mawozo took hostage a group of seventeen missionaries—sixteen Americans and one Canadian. The superseding indictment does not charge Germine with the hostage taking of the Canadian missionary, so the Court generally refers to only the sixteen American hostages at issue here.

providing record citations where it had adduced evidence of the hostages' nationality. See Not. Regarding Nationality of Victims [ECF No. 86]. Following trial, the parties briefed Germine's renewed motion for a judgment of acquittal and motion for a new trial. See Renewed Mot. J. Acquittal & Alt. Request New Trial [ECF No. 117] ("Mot."); Gov't's Opp'n Def.'s Mot. [ECF No. 119] ("Opp'n"); Def.'s Reply Opp'n (ECF No. 120) ("Reply"). The motion is now ripe for decision.

## Analysis

### I. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29(a) provides in relevant part that "after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Subsection (b) permits the court to "reserve decision on the motion . . . and decide the motion . . . after [the jury] returns a verdict of guilty." See Rule 29(b). Because the Court so reserved its decision, it "must decide the motion on the basis of the evidence at the time the ruling was reserved"—here, after the close of all evidence. See id.[2]

"In assessing a Rule 29 motion, the Court ordinarily construes the evidence in the light most favorable to the government and must uphold the jury's verdict if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Green, 735 F. Supp. 3d 8, 17 (D.D.C. 2024) (quoting United States v. Wahl, 290 F.3d 370, 375 (D.C. Cir. 2002) (emphasis in original)); Jackson v. Virginia, 443 U.S. 307, 319 (1979). Put another way, a court may grant a motion for a judgment of acquittal only when "a reasonable juror

---

[2] The Court is not limited to the evidence in the record at the conclusion of the government's case-in-chief, because the Court denied Germine's first motion for a judgment of acquittal made at that time. See May 14 AM Tr. at 1781:25–1782:25. Germine's operative motion is his renewed motion made at the close of all evidence. See May 15 PM Tr. at 2044:11–2045:2.; Mot. at 1. Because closing arguments are not evidence, see, e.g., May 15 PM Tr. at 2148:9–12, the Court does not consider Germine's arguments related to the government's closing argument here.

3

must necessarily have had a reasonable doubt as to the defendant['s] guilt." United States v. Weisz, 718 F.2d 413, 437 (D.C. Cir. 1983) (emphasis in original).

Germine challenges the sufficiency of the evidence as to Counts 2–17, arguing that the government did not produce sufficient evidence that each hostage was a U.S. national as required by 18 U.S.C. § 1203(a).[3] A "national of the United States" in § 1203(a) is defined by reference to the Immigration and Nationality Act as "a citizen of the United States," Straker, 800 F.3d at 585 (quoting 8 U.S.C. § 1101(a)(22)), and "requires examination of the victim's status at the time of the abduction," id. So the Court instructed the jurors that "[f]or each of the 16 counts of hostage taking, the government must establish . . . beyond a reasonable doubt . . . [that] the hostage was a United States national during the relevant time from on or about October 16, 2021, to on or about the latest December 16, 2021." See May 15 PM Tr. at 2178:11–16.

A straightforward review of the evidence easily convinces the Court that any rational trier of fact could have found beyond a reasonable doubt that each hostage was a U.S. national. Begin with the testimony of the hostages themselves. The government called four of the sixteen hostages to testify, and each offered direct or circumstantial evidence of his or her nationality, as well as of that of some or all of the other hostages. Rachel Miller identified all seventeen hostages by name[4] and stated "[t]hey were all from the U.S." except for "Dale," who was Canadian. See Trial Tr. (May 7, 2025 AM) [ECF No. 101] ("May 7 AM Tr.") at 541:7–542:21. She also testified that she is "from Virginia" and "grew up in Pennsylvania." Id. at 539:24–25. Cherilyn Smucker (née

---

[3] Germine's oral description of his renewed motion for a judgment of acquittal alleged insufficient evidence only as to Counts 2–5 and 9–14. See May 15 PM Tr. at 2044:12–2045:2. In his written motion, Germine purports to move for a judgment of acquittal on all § 1203(a) counts. See Mot. at 3. Because Germine's motion fails as to all counts, the Court will assume without deciding that Germine properly renewed his motion on Counts 2–17.

[4] The sixteen hostages, as they correspond to Counts 2–17, are: Melodi Korver, Ryan Korver, Matthew Miller, Rachel Miller, Cherilyn Smucker (née Noecker), Cheryl Noecker, Courtney Noecker, Austin Smucker, Samuel Stoltzfus, Katie Yoder, Westley Yoder, A.K., L.K., B.N., K.N., and S.N. See Superseding Indict. at 8–9.

4

Noecker), who was taken hostage alongside her mother and four of her siblings, testified that everyone in her family, including the six who were taken hostage, are U.S. citizens. See Trial Tr. (May 12, 2025 AM) [ECF No. 107] ("May 12 AM Tr.") at 1298:10–12. Matthew Miller testified that he "grew up in Ohio," worked in Ohio prior to his arrival in Haiti, and "currently live[s] in . . . Virginia." See Trial Tr. (May 6, 2025 AM) [ECF No. 99] ("May 6 AM Tr.") at 312:10–13, 314:1–9. And finally, Austin Smucker testified that he is from Oregon, lived as a missionary in Poland, and "came back to the [United] States in 2011." May 12 AM Tr. at 1248:23–1249:7. He also testified that his departure for Haiti was delayed because he had to renew his passport. See id. at 1249:17–21. The government further admitted into evidence a WhatsApp message that Samuel Stoltzfus—another hostage—had posted contemporaneously with the group's October 2021 abduction, stating: "Please pray for us. . . . [The gang has] control of our vehicle with about 15 Americans right now. Ladies, men, and children." Trial Tr. (May 6, 2025 PM) [ECF No. 100] ("May 6 PM Tr.") at 362:7–16, 363:7–15; see Exhibit 870.

But that's not all the hostages said. They also consistently testified about the involvement of the U.S. Embassy, U.S. law enforcement, and U.S. military following their release or escape. Matthew Miller, who was released by the gang in November 2021 after his health had deteriorated, stated that he had contemplated that it might "take somebody dying for the U.S. to intervene." See May 6 PM Tr. at 396:8–12. When describing his release, Matthew explained that 400 Mawozo members drove him to a meeting spot and delivered him to "an American," who told Matthew "'you're safe now,'" and took him to the U.S. Embassy in Haiti. See id. at 406:4–18. Rachel Miller, who was released with Matthew, similarly testified that a priest took the Millers to the U.S. Embassy, where they were transported to the "military base at Guantanamo" and then flown in a "military plane" to Florida. See May 7 AM Tr. at 566:11–20, 567:7–15. Next, Rachel Miller,

5

Austin Smucker, and Cherilyn Smucker all attested to meeting with the FBI shortly after their release or escape. See id. at 566:11–20 (Rachel Miller); May 12 AM Tr. at 1282:3–6 (Austin Smucker), 1332:21–25 (Cherilyn Smucker). Cherilyn Smucker testified that although some of the hostages sought to remain in Haiti following their escape, the FBI determined they had to leave the country. See May 12 AM Tr. at 1333:1–13. The FBI then drove the hostages to the airport, where the hostages took a "U.S. Coast Guard plane" to Florida. See id. at 1333:17–1334:7; see also Exhibits 25 & 27.

Although the hostages provided adequate testimony regarding their nationality, the jury did not have to rely on the hostages' testimony alone. The jury also had corroborating testimony from three U.S. law enforcement officers who had worked on the case while serving as Special Agents in the FBI's Miami office. Special Agent Zachary Harrison testified that he investigated "violent crimes that occurred to U.S. victims overseas . . . ." May 6 PM Tr. at 434:8–435:1. He explained that his office had seen "an [uptick] in incidents of kidnapping, specifically that affected U.S. citizens," in Haiti in 2019, id. at 435:17–23, and he confirmed that he was on the case team for what government counsel referred to as "the hostage taking of the American victims in this case," id. at 450:3–13. Special Agent Ryan Bonura similarly testified that he was a "primary case agent[]" for, in government counsel's words, the "hostage taking of 16 American missionaries." Trial Tr. (May 7, 2025 PM) [ECF No. 102] at 646:12–22; see also id. at 653:20–654:8 (confirming that he had served the defendant with an arrest warrant for, in government counsel's words, "the hostage taking of 16 Americans"). And Special Agent John Fritz Dugue also responded in the affirmative when government counsel asked whether he had been "involved in the FBI's investigation into the 2021 hostage taking of American missionaries[.]" See Trial Tr. (May 13, 2025 PM) [ECF No. 110] at 1668:19–21.

Finally, other witnesses further corroborated the hostages' U.S. nationality. Government witness Jonas Isador, an extended relative of Germine, discussed Germine's belief, as relayed to Isidor, that the missionaries' death would "entail . . . U.S. military boots in Haiti." See Trial Tr. (May 13, 2025 AM) [ECF No. 109] ("May 13 AM Tr.") at 1523:24–1524:23. In a summary video admitted into evidence, Lanmo Sanjou, who several hostages identified as another leader of 400 Mawozo, referred to the missionaries as "Americans." See Exhibit 900.1; May 6 PM Tr. at 455:17–23 (Agent Harrison reading an English translation of a portion of the video). And in Germine's own testimony, he referred to the October 2021 event as "the kidnapping of the U.S. missionaries." See Trial Tr. (May 14, 2025 PM) [ECF No. 112] at 1834:19–1835:4.

Germine does not dispute this evidence; he argues simply that the government could have and should have produced more. See Mot. at 5.[5] But the Court's inquiry is not whether the government offered all available evidence to prove a particular element of the offense. It is simply whether the evidence that the government did offer—direct and circumstantial, viewed in the light most favorable to the government, and granting the benefit of all reasonable inferences—was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that each hostage was a U.S. national at the time of the hostage taking. See, e.g., Wahl, 290 F.3d at 375; Weisz, 718 F.2d at 438. And the evidence here was sufficient.

The government introduced uncontroverted testimony from Rachel Miller that all sixteen hostages were from the United States. Cherilyn Smucker, Austin Smucker, and Matthew Miller provided corroborating testimony, as did the admitted WhatsApp message from Samuel Stoltzfus. Cherilyn Smucker testified that her family members—who comprised six of the sixteen hostages—

---

[5] Germine's argument that the government should have submitted written documentation of each hostage's U.S. nationality, such as a driver's license or passport, see Mot. at 5–6, is meritless. Germine cites no authority—and the Court is aware of none—for the proposition that an individual's U.S. nationality cannot be established through oral testimony.

7

were U.S. citizens, and Austin Smucker and Matthew Miller testified that they were from and lived in the United States. Samuel Stoltzfus's message referred to the hostages as "American."

Next, the testimony of the hostages' nationality was corroborated by testimony explaining the significant involvement of the United States government in this ordeal. Several hostages testified that immediately following their release or escape, they were taken to the U.S. Embassy in Haiti, interviewed by U.S. law enforcement, and flown to the United States in U.S. military planes. These statements were then further corroborated by circumstantial evidence from, among others, three U.S. law enforcement officers who investigated the hostage taking and Germine himself. And there is absolutely no evidence—none—that any of the sixteen missionaries were nationals of a country other than the United States, i.e., were not U.S. nationals.

"[A] judgment of acquittal is appropriate only when there is no evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt." Weisz, 718 F.2d at 438. Because the government has introduced sufficient evidence upon which a reasonable juror might fairly conclude beyond a reasonable doubt that each of the sixteen hostages was a U.S. national, the Court will deny Germine's renewed motion for a judgment of acquittal on Counts 2–17. See United States v. Long, 905 F.2d 1572, 1576 (D.C. Cir. 1990) (a "jury is entitled to draw a vast range of reasonable inferences from [the] evidence"); United States v. Merlino, 592 F.3d 22, 30–31 (1st Cir. 2010) (reversing district court's grant of judgment of acquittal where government's proof consisted of "uncorroborated testimony" from one witness and a lack of contradictory evidence).[6]

---

[6] Because the Court concludes the Rule 29 challenge fails on the merits, the Court does not address the government's brief arguments that the nationality requirement is jurisdictional, rather than an essential element of an 18 U.S.C. § 1203(a) offense, and that defense counsel's opening statement that the hostages' nationality was not in dispute constituted a judicial admission. See Opp'n at 10–12 & n.4.

**II.       Motion for a New Trial**

That leaves Germine's motion for a new trial.[7] Rule 33(a) authorizes a court to "vacate any judgment and grant a new trial if the interest of justice so requires." "The rules do not define 'interest of justice' and courts have had little success in trying to generalize its meaning," but the D.C. Circuit has held that "granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred." United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014) (internal citations and quotation marks omitted). "The defendant bears the burden of demonstrating that a new trial is justified," United States v. Venkata, 709 F. Supp. 3d 9, 20 (D.D.C. 2024) (citing United States v. Mangieri, 694 F.2d 1270, 1285 (D.C. Cir. 1982)), and "[t]rial courts enjoy broad discretion" in ruling on such a motion, Wheeler, 753 F.3d at 208.

Germine's motion rests on his claim that government counsel made an improper statement during closing argument. "[A] prosecutor's statements in closing argument 'will rarely warrant a new trial.'" United States v. Borda, 848 F.3d 1044, 1060 (D.C. Cir. 2017) (quoting United States v. Watson, 171 F.3d 695, 699 (D.C. Cir. 1999)). The inquiry is "whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Put another way, there must have been a prosecutorial error, and the error must have prejudiced the defendant by "affect[ing] the jury's ability to view the evidence fairly." Id. (citing United States v. Thomas, 114 F.3d 228, 246 (D.C. Cir. 1997)).

---

[7] Although the Court harbors doubt that Germine's motion for a new trial is timely under Federal Rule of Criminal Procedure 33(b)(2), the Court resolves the motion on the merits because the government did not raise the issue. See, e.g., United States v. Pole, Crim. A. No. 9-354 (EGS), 2021 WL 5796518, at *7 (D.D.C. Dec. 7, 2021) (taking same approach); see also Eberhart v. United States, 546 U.S. 12, 13 (2005) (per curiam) (holding Rule 33(b)(2)'s time limit is not jurisdictional but a "claim-processing rule").

9

Germine claims that government counsel's statement that "in the defense's opening, they told you that [the element of the hostages' nationality] is not in dispute" was a <u>de facto</u> instruction to the jury that the government need not prove the hostages' U.S. nationality beyond a reasonable doubt.  <u>See</u> Mot. at 2–3 (quoting May 15 PM Tr. at 2130:15–16).  And that instruction, the argument goes, affected the jury's ability to view the evidence of the hostages' nationality fairly and thus prejudiced the defendant.  <u>See</u> <u>id.</u> at 3.

In its opening statement, defense counsel stated the following:

> Some of the things that are not in dispute, firstly, that the 17 missionaries, 16 of whom were Americans, were taken hostage. That is not in dispute.

May 6 AM Tr. at 308:17–19.

In its closing argument, defense counsel then stated the following:

> [T]he government's burden that they have to prove beyond a reasonable doubt is that the hostage was a United States national during the relevant time on or about October 16th, 2021, to on or about at the latest December 16, 2021. Other than Cherilyn Noecker talking about her immediate family and the fact that they were from the United States and other than Matt Miller mentioning that he was from Portland—Portland, Oregon, there was no other testimony or no other documents to support that the hostage was a United States national during the relevant time. You're going to get all the evidence. You're going to be able to sift through it yourself. So for the other hostages, other than the Noecker family and Matt Miller, you should find that the government has not—has not met this burden of proving that they were United States national[s].

May 15 PM Tr. at 2118:11–2119:3.

In its rebuttal closing argument, government counsel then stated the following:

> Let's talk about this U.S. nationals issue . . . . [F]rankly, we're going to do this really quickly because . . . **we really don't think that the evidence is in dispute here**, but we want to clear it up for you. **Your recollection of the evidence controls**. . . . **[W]hat the government submits [ ] happened at [trial]** was Rachel Miller said all of these people are from [the] U.S. except for Dale. Multiple people referred to Dale as "the Canadian." Right? Cherilyn said her whole family is from America. Agent Harrison said we're investigating 16 Americans who were kidnapped. Lanmo called them "the Americans." Sam Stoltzfus in his WhatsApp message said "Americans." Matt Miller told you he's from Ohio. Austin Smucker

10

told you he's from Oregon. **And in the defense's opening, they told you that this element of the offense is not in dispute.** So we're here today and you can have your—you—**your recollection controls, but the government submits that there is no evidence to the contrary**; that the 16 charges are all with respect to U.S. nationals.

Id. at 2129:21–2130:20 (emphases added).

The Court finds no error in government counsel's statement. First, setting aside the sentence's content, Germine does not explain how one party's accurate summary of another party's statement constitutes an error, let alone one so severe as to warrant a new trial. In its closing argument, the government essentially repeated one sentence from the defense's opening statement to directly respond to a challenge raised in the defense's closing argument. This is dissimilar from the types of rare statements that courts have concluded constituted prosecutorial error, such as statements unsupported by the evidence, misstatements of admitted evidence, and misquoting of witness testimony. See Watson, 171 F.3d at 699.

Next, the sentence's content was neither misleading nor inappropriate. In context, government counsel summarized the evidence of the hostages' nationality, emphasized the lack of contrary evidence, reminded the jurors twice that their recollection of the evidence controlled, and accurately stated that "in the defense's opening, they told you that this element of the offense is not in dispute." See May 15 PM Tr. at 2129:21–2130:20. Read fairly, the government both reminded the jury that it had produced sufficient and uncontested evidence to prove this element beyond a reasonable doubt and responded to defense counsel's closing argument—which had emphasized the government's modest evidence on this score—by explaining that Germine initially had not vigorously contested this point. The government's apparent explanation for why it had not focused more on this element was neither an admission that the government had failed to prove the element nor an instruction to disregard it.

Furthermore, even if the Court adduced an error, any error was not so prejudicial as to require a new trial. The statement neither manipulated the evidence nor "implicate[d] other specific rights of the accused such as the right to counsel or the right to remain silent." Darden, 477 U.S. at 181–82. Plus, the statement was sandwiched between government counsel's summary of the evidence and a reminder that the jurors' recollection of that evidence controlled. May 15 PM Tr. at 2129:21–2130:20. The Court then instructed the jury both that counsels' opening and closing statements were not evidence and that the government was required to prove beyond a reasonable doubt that each hostage was a U.S. national during the relevant period. See id. at 2148:9–12, 2178:11–16. The Court therefore has no reason to doubt that the jury understood its duty to assess whether the government had proven beyond a reasonable doubt that each hostage was a U.S. national. See, e.g., Darden, 477 U.S. at 182 (finding prosecutors' statements did not warrant a new trial where the court had "instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence"); United States v. Moore, 651 F.3d 30, 51 (D.C. Cir. 2011) (explaining that courts presume "a jury acts with common sense and discrimination when confronted with an improper remark from a prosecutor" (quoting United States v. Childress, 58 F.3d 693, 716 (D.C. Cir. 1995))); Straker, 800 F.3d at 593 (when courts issue instructions, "[j]uries are presumed to follow" them); see also Darden, 477 U.S. at 181–82 (in determining an improper statement's effect on the trial, considering that the "objectionable content was invited by or was responsive to" the defense's statement). Hence, the Court will deny Germine's motion for a new trial.

## Conclusion

For the foregoing reasons, the Court will deny Germine's renewed motion for a judgment of acquittal and motion for a new trial. A separate Order will issue on this date.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: July 25, 2025