## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Case No. 1:22-cr-00161-JDB** |
| | : | |
| **JOLY GERMINE, et al.,** | : | |
| **Defendant.** | : | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEYS, Allen H. Orenberg and Elita Amato, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Joly Germine. There can be no dispute that this court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a). When fashioning an appropriate sentence, the court is requested to impose a sentence which properly reflects the 18 U.S.C. §3553(a)(1-7) factors. Consequently, Mr. Germine asks the Court to impose a term of imprisonment no longer than 308 months, concurrent to the sentence imposed in related case no. 21-cr-699-JDB

### I.    Case Background

### A.    The Instant Case

On July 19, 2022, a federal grand jury in the United States District Court for the District of Columbia returned a seventeen-count Superseding Indictment charging Joly Germine, also known as "Yonyon," with Conspiracy to Commit Hostage Taking, in violation of 18 USC § 1203(a) (Count One); and Hostage Taking and Aiding and Abetting and Causing an Act to be Done, in violation of 18 USC §§ 1203(a) and 2 (Counts Two through Seventeen).

1

Following a jury trial, Mr. Germine was found guilty on May 16, 2025, on Counts One through Seventeen of the Superseding Indictment.

The United States Probation Office is recommending a life sentence (Counts 1 – 17), followed by 60 months of supervised release and a special assessment of $1,700.00. A fine is not recommended. Also, "Probation recommends the sentence be served concurrently to the sentence imposed in Dkt. No. 21CR699, pursuant to the instruction in USSG § 5G1.3(b)(2)." *See "See Sentencing Recommendation.* [Doc. 127]

Mr. Germine and counsel have reviewed the (draft & final) PSR, as well as the (aforementioned) recommendation.

A sentencing hearing is scheduled December 3, 2025, at 1:00 p.m.

## B. <u>Related Case</u>

Mr. Germine was charged in a related case (No. 1:21-cr-00699-001) in a Superseding Indictment with Conspiracy to Violate the Export Control Reform Act, in violation of 50 USC § 4819 (Count 1); Conspiracy to Commit Smuggling and to Defraud the United States, in violation of 18 USC § 371 (Count 2); Export Control Reform Act, Aiding and Abetting, Causing an Act to be Done, in violation of 50 USC § 4819 (Counts 3-17); Smuggling, Aiding and Abetting, Causing an Act to be Done, in violation of 18 USC §§ 554(a) and 2 (Counts 18-20); Laundering of Monetary Instruments, Aiding and Abetting, Causing an Act to be Done, in violation of 18 USC §§ 1956(a)(2)(A) and 2 (Counts 21-34); and Laundering of Monetary Instruments, Aiding and Abetting, Causing an Act to be Done, in violation of 18 USC §§ 1956(a)(1)(A)(i) and 2 (Counts 35-48).

On January 31, 2024, and near the conclusion of a bench trial, Mr. Germine voluntarily pled guilty to all counts of the Superseding Indictment. He was sentenced on June 24, 2024, to concurrent terms of 240 months as to each of Counts 1, 3-17 and 21-48; 60 months as to Count 2, to run consecutively to Counts 1, 3-17 and 21-48; 120 months as to each of Counts 18-20, with each of Counts 18 and 19 to run concurrently to Counts 1, 2, 3-17 and 21-48, and Count 20 to run consecutively to Counts 1, 2, 3-17 and 21-48; for a total of 420 months of incarceration, followed by concurrent terms of 36 months of supervised release as to each count.

In this related case, the prior case guidelines were increased based on the kidnaping enhancement. Mr. Germine, therefore, should not be penalized twice.

## II.    **Objections to the Presentence Investigation Report ("PSR")**

The following are the unresolved objections to the PSR [Doc. 126]:

A.    Objection to Guidelines Calculations

1.    Mr. Germine denies he was an organizer or leader of the 400 Mawozo, and the application of +4 levels, pursuant to USSG §3B1.1(a), is accordingly not warranted. *See* paragraph nos. 13, 19, 22, 56, 64, 73, 81, 89, 97, 105, 113, 121, 129, 137, 145, 153, 161, 169, 177 & 203.

2.    Mr. Germine did not attempt to obstruct or impede justice when he testified at trial, but was exercising his constitutional rights to present his truth to the jury. Therefore, he should not receive an upward adjustment of +2 levels, pursuant to USSG §3C1.1. *See* paragraph nos. 20, 25, 57, 65, 74, 82, 90, 98, 106, 114, 122, 130, 138, 146, 154, 162, 170 & 178.

Without the application of these upward adjustments, the adjusted offense level for each count would be the following:

Group 1 (Ct. 1A) -      42
Group 2 (Ct. 1B) -      42
Group 3 (Ct. 1C) -      44
Group 4 (Ct. 1D) -      42
Group 5 (Ct. 1E) -      42
Group 6 (Ct. 1F) -      42
Group 7 (Ct. 1G) -      42
Group 8 (Ct. 1H) -      42
Group 9 (Ct. 1I) -      42
Group 10 (Ct. 1J) -     42
Group 11 (Ct. 1K) -     42
Group 12 (Ct. 1L) -     44
Group 13 (Ct. 1M) -     44
Group 14 (Ct. 1N) -     44
Group 15 (Ct. 1O) -     44
Group 16 (Ct. 1P) -     44

**MULTIPLE COUNT ADJUSTMENT**

| Group | Adjusted Offense Level | Units |
|---|---|---|
| Group 1 (Ct. 1A) | 42 | 1 |
| Group 2 (Ct. 1B) | 42 | 1 |
| Group 3 (Ct. 1C) | 44 | 1 |
| Group 4 (Ct. 1D) | 42 | 1 |
| Group 5 (Ct. 1E) | 42 | 1 |
| Group 6 (Ct. 1F) | 42 | 1 |
| Group 7 (Ct. 1G) | 42 | 1 |
| Group 8 (Ct. 1H) | 42 | 1 |
| Group 9 (Ct. 1I) | 42 | 1 |
| Group 10 (Ct. 1J) | 42 | 1 |
| Group 11 (Ct. 1K) | 42 | 1 |
| Group 12 (Ct. 1L) | 44 | 1 |
| Group 13 (Ct. 1M) | 44 | 1 |
| Group 14 (Ct. 1N) | 44 | 1 |
| Group 15 (Ct. 1O) | 44 | 1 |
| Group 16 (Ct. 1P) | 44 | 1 |

Total Number of Units: 16
Greater of the Adjusted Offense Levels Above: 44
Increase in the Offense Level (USSG §3D1.4): +5
Combined Adjusted Offense Level: 49                                    **49**
*Chapter 4 Adjustments:* None.                                         **0**
*Adjustment for Acceptance of Responsibility*: None.                   **0**
*Total Offense Level*:                                                 **43**

4

(An offense level of more than 43 is to be treated as 43, Chapter 5, Sentencing Table, Application Note No.: 2)

B.    Other Objections

1.    Para. No. 202:    Mr Germine denies he is a U.S. Citizen.

2.    Para. No. 203:    Mr. Germine denies he "directed operations from prison using an unmonitored cell phone."

3.    Para. No. 210:    Mr. Germine denies "he had access to and continued to consume alcohol."

4.    Para. No. 212:    Mr. Germine <u>did</u> recall the name of his school – "CSC."

## III.    **Smith Departure as a Deportable Alien**

Mr. Germine moves for a 6-month reduction pursuant to *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). Mr. Germine is not a United States citizen but a citizen of Haiti. He was brought to the United States solely for the purpose of facing the charges in this case and his second case. Therefore, it is inevitable that he will be deported back to Haiti.

His status as a deportable alien will undoubtedly cause an increase in the severity of his confinement because he will almost certainly be ineligible for the benefits of 18 U.S.C. § 3624. Such section directs the Bureau of Prisons to assure that prisoners spend part of the last portion of their sentences, up to one year, under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry in the community."

In *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), the United States Appellate Court for the District of Columbia found that a downward departure from

5

the recommended range under the Sentencing Guidelines may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his departure. *See also, Lartey v. Department of Justice*, 790 F.Supp. 130 (W.D. La 1992). Since Mr. Germine is not a U.S. citizen and is deportable, he will not be afforded placement of less severe confinement during the last portion of his sentence, and thereby will suffer an increase in the severity of his sentence solely based on his immigration status. [1]

Therefore, under *Smith* a departure is warranted to equalize his situation.

## IV.  Framework And The Guidelines Are Not Mandatory

The court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S. Ct. 738 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. § 3553 (a). *See id.* at 757,764–67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence

---

[1]

Nor will he be able to receive any potential benefit by participating in any Bureau of Prison programs, as afforded by The First Step Act which provides opportunities to receive time credits for successful participation in certain work and education programs. He would be ineligible for any First Step Act credits because of his disqualifying convictions for Conspiracy to Commit Hostage Taking and Hostage Taking and Aiding and Abetting and Causing an Act to be Done.

necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).[2]   This represents a cap above which the Court is *statutorily prohibited* from sentencing, even when a far greater sentence is recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989) (Becker, J., concurring in part, dissenting in part).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that

---

[2]   18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

### V.    Nature and Circumstances of the Offense and History and Characteristics of Mr. Germine

#### A.    The Nature and Circumstances of the Offense

Trial concluded on May 16, 2025, when a jury convicted Mr. Germine on all 17 counts of the Superseding Indictment.

#### B.    History and Characteristics of Mr. Germine

The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Germine also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR, ¶¶195-221. In addition to "Personal and Family Data" contained in the PSR, counsel notes the following information:

Mr. Germine was born and raised in Haiti. His parents left him in Haiti when they came to live in the United States.  He was raised and taken care of by an Aunt and Uncle. He had many cousins to play with growing up however, not having his parents with him surely impacted him.

When he was a young man, he received lands and invited farmers to grow crops on the land, including corn, beets, beans and other vegetables. Haiti was a poor country even when Mr. Germine was growing up. He helped his fellow Haitians by allowing farmers to farm on his lands. As an enterprising young man, he also looked

for other businesses to engage in, including a clothing business, of bringing clothes from the United States to sell in Haiti.

Mr. Germine genuinely tried to help his countrymen, especially those that did not have much. The Haitian government did not provide services and resources to the poor like we have in this country, and Mr. Germine tried to fill the gap.

He became involved in helping to protect people who were being physically harmed by others. He was able to encourage others to join his band of brothers in protecting persons from the violence. Because of his success and influence, he later became involved in politics as well.

Lastly, a sentence in the United States for Mr. Germine is more difficult than for the typical American, as Mr. Germine tries to learn a new language and a different culture--all the while being incarcerated.

## VI.    <u>Respect for the Law and Deterrence</u>

Mr. Germine exercised his Constitutional right to a jury trial. His personal history and characteristics as described throughout this memorandum, as well as noted in the support letter from his mother, it is improbable that he will participate in criminal activities in the future. There are numerous reasons to be optimistic that Mr. Germine will not engage in further criminal behavior, including the prospect of a lengthy prison sentence and the continued support of his family. He is determined to be a peaceful, productive and responsible member of his community. Any prison sentence longer than 308 months imprisonment will have no greater effect toward the goals of sentencing than a life sentence. Undersigned is unaware of any studies to the contrary.

## VII.   The Need to Avoid Unwarranted Sentencing Disparities, and

### Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Germine's criminal convictions are serious and will likely have irreparable consequences for the victims. However, the Court should not impose a sentence which would result in an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.

### A.   The Related Case

The co-defendants in the related case (No. 21-cr-699-JDB) have been sentenced as follows:

a.   Elianda Tunis: Sentenced on June 5, 2024, to 150 months (12 years, 6 months) as to each of Counts 1ss, 3ss-17ss and 21ss-48ss; 60 months (5 years) as to Count 2ss; and 120 months (10 years) as to each of Counts 18ss-20ss. All terms of incarceration run concurrently, with credit for time served. Followed by 36 months (3 years) of supervised release as to each of counts 1ss-48ss. All terms of supervised release to run concurrently. $100 Special Assessment as to each count (for a total of $4,800).

b.   Jocelyn Dor: Sentenced on February 28, 2024, to sixty (60) months as to Count 1s and sixty (60) months as to each of Counts 2s, 7s, 12s, 24s, and 27s. Terms of imprisonment to run concurrently, with credit for time served. Thirty-Six (36) months of supervised release as to each of Counts 1s, 2s, 7s, 12s, 24s, and 27s. Terms of supervised release to run concurrently. Special assessment of $100 on each count (for a total of $600).

10

c.    Walder St. Louis: Sentenced on March 14, 2024, to Thirty-Six (36) months as to Count 1s and Thirty-Six (36) months as to each of Counts 9s, 10s, 11s, & 31s. Terms of imprisonment to run concurrently, with credit for time served. Thirty-Six (36) months of supervised release as to each of Counts 1s, 9s, 10s, 11s, and 31s. Terms of supervised release to run concurrently. Special assessment of $100 on each count (for a total of $500).

Neither Mr. Dor nor Mr. St. Louis were required to plead guilty to money laundering counts that alleged proceeds from ransom activities, although the evidence relating to the source of gang funds and their awareness that the funds they used to purchase firearms was clear. And, with respect to Mr. St. Louis, the government negotiated a plea agreement in which the parties agreed to an Offense Level of 26, with no specific offense characteristics, so that after a three-level reduction for acceptance of responsibility, St. Louis's Final Offense Level was 23. This was before consideration of any further reduction for his cooperation in this matter. Yet, as it is clear from the description of the offense conduct in the PSR, Mr. St. Louis had an integral role in this criminal venture as did Ms. Tunis and Mr. Dor.

The purpose in highlighting the sentences of the co-defendants is intended to put into perspective why any sentence longer than 25 years for Mr. Germine will be disproportionate and, respectfully, unreasonable. While the criminal conduct of the other co-defendants may be less than that of Mr. Germine, the recommended sentence considers their differing roles and involvement.

The fact that Messrs. Germine, Dor, St. Louis and Ms. Tunis engaged in criminal conduct, sometimes together, sometimes apart and sometimes the conduct

was different, is of little consequence. Each knew they were involved in a joint venture and each knew that the guns were intended for the gang and each knew the gang was involved in illegal activities such that the monies received from the gang were from an illegal source. Notwithstanding Mr. St. Louis' cooperation deal, each co-defendant is essentially equally culpable for this criminal enterprise. Our criminal justice system rewards cooperators such as Mr. St. Louis and, frankly, prosecutors often depend on the testimonies of cooperators. But cooperation "credit" does not mean that the conduct is any less serious than it was at the time it was engaged in.

## B.  Other Cases

There have been other kidnaping cases from Haiti, and courts impose sentences around 200 months' of incarceration.

In *United States v. Saint Louis*, 889 F.3d 145, 149 (2018), the defendant was charged with kidnapping two victims in Haiti. For the first victim, a "group of men forced her at gunpoint into her car, beat her severely, and drove her to a house where they held her for seven days before she escaped." *Id.* For the second victim, the kidnappers "held [the victim] for four days" and "raped [the victim's] niece." *Id.* (alterations added). The kidnappers "were each sentenced to 240 months in prison." *Id.* at 151.

In *United States v. Noel*, 893 F.3d 1294, 1297 (2018), the defendant was also charged with kidnaping in Haiti:

> Noel and his co-conspirator approached the victim and took her hostage by brandishing a firearm. Noel and his co-conspirator took from her two cellular telephones, her wedding rings, her Haitian driver's license and some Haitian and United States currency. They called the victim's family

12

members, also located in Haiti, and demanded a ransom of $150,000 for her safe release. Later that evening they drove her to a school where they blindfolded, handcuffed, and gagged her, keeping her at the school for three days. In phone calls to the victim's family, Noel and his co-conspirator continued to demand $150,000 for her release, and Noel threatened to kill the victim and her children if her family did not pay the ransom.

*Id.* "The district court sentenced Noel to 235 months' imprisonment." *Id.*

Moreover, any sentence above 308 months would result in an unwarranted sentencing disparity when considering average and median sentences impose. The PSR at ¶249 cites Judiciary Sentencing Information over the last five years:

> "During the last five fiscal years (FY2020-2024), there were 22 defendants whose primary guideline was §2A4.1, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 22 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 308 month(s) and the median length of imprisonment imposed was 312 month(s). For all 22 defendants in the cell, the average sentence imposed was 308 month(s) and the median sentence imposed was 312 month(s)."

Therefore, sentences above 308 months appear to be rarities.

## VIII.  The Kinds of Sentences Available
##        and the Defendant's Sentencing Proposal

According to the PSR, Mr. Germine is deemed a total offense level of 43, with a criminal history category of I. This results in a recommended guidelines "life" sentence. (Doc. 126 at ¶ 223) As noted herein-above, the U.S. Probation Office is recommending a life sentence, 60 months supervised release and a special assessment of $1,700.00. (A fine is not recommended) *See Sentencing Recommendation.* [Doc. 127]

The U.S. Probation Office also recommends that any sentence imposed be concurrent to the sentence imposed in 21-cr-699-JDB.[3]

Of course, the Supreme Court has ruled that the punishment guidelines set out by the Commission are entirely advisory, so that range of punishment is simply one factor to be considered. Most recently, on November 1, 2025, the guidelines were amended. Under §1B1.1 of the amended guidelines, sentencing is now a two-step process: (1) calculate the guideline range, and then (2) determine the appropriate sentence under §3553(a) to impose a sentence "sufficient but not greater than necessary." This court is required to consider other factors set out in 18 U.S.C. § 3553 (a). The purposes of sentencing include punishment based on the nature and circumstances of the offense, general deterrence, specific deterrence, to protect the public from further crimes of the defendant, and rehabilitation. A punishment of a life sentence (as recommended by the U.S. Probation Office) will have the exact opposite effect from what is in the interest of justice and will not conform with the instructions set forth in 18 U.S.C. § 3553 (a).

## CONCLUSION

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein Mr. Germine respectfully asks this court to use its discretion to fashion a sentence

---

[3] On June 24, 2024, the Court imposed a total term of 420 months (35 years), followed by 36 months of supervised release. *See* Doc. 228, 21-cr-699-JDB.

which takes into account the unique circumstances of his case, as well as the sentence imposed in related case no. 21-cr-699-JDB.

Mr. Germine submits a sentence of 308 months imprisonment is sufficient, but not greater than necessary, to comply with" the purposes of punishment, as well as both specific and general deterrence. He also asks that the sentence imposed be concurrent to the sentence in related case no. 21-cr-699-JDB.

Mr. Germine is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in a longer period of federal imprisonment. Mr. Germine recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions. The devastating and irreparable consequences to his family, are more than enough incentive for him to respect and comply with all aspects of any sentence imposed.

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by the recommended sentence herein.

Respectfully, for the foregoing reasons and any other reasons which may appear just and proper, Mr. Germine asks the court to impose a sentence of 308 months imprisonment, 60 months supervised release and a special assessment of $1,700.00 – concurrent to the sentence imposed in related case no. 21-cr-699-JDB. Such a sentence does nothing to undermine the deterrent effect of sentencing goals. Neither does such

15

a sentence undermine the statutory need for the court to underscore, for Mr. Germine and for the community, the seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law. To do otherwise would be manifestly unjust and a miscarriage of justice.

Finally, Mr. Germine is asking the court for the following recommendation:

1. A judicial recommendation to the Federal Bureau of Prisons for designation to a facility in the South Florida region.

Respectfully submitted,

THE ORENBERG LAW FIRM, LLC


_____
Allen H. Orenberg, Bar No. 395519
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Telephone:   (301) 807-3847
Fax:          (240) 238-6701
aorenberg@orenberglaw.com
Counsel to Joly Germine



_____-s-_____
Elita C. Amato, Bar No. 442797
2111 Wilson Blvd.
Suite 8th Floor
Arlington, VA 22201
Telephone:   (703) 522-5900
Fax:          (703) 997-7775
amato.law@comcast.net
Counsel for Joly Germine

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2025, I caused a copy of the foregoing Defendant's Memorandum in Aid of Sentencing, with Exhibit, to be served by CM/ECF to case registered parties, and by e-mail to USPO Hana Field.


_____
Allen H. Orenberg